HOLLOMAN *v.* LINDSEY ET AL.

[70 South. 81.]

BROKERS. *Purchasers.*

Where appellant sued, by attachment in chancery for breach of contract to convey him certain land, and demanded a decree for the difference between the price he claimed he contracted to pay appellee, and the price at which he had entered into a contract to resell it to third parties, the court *held* that under the facts as shown in the opinion of the court appellant was a purchaser and not an agent and was entitled to recover the amount sued for.

APPEAL from the chancery court of Yazoo county.

HON. P. Z. JONES, Chancellor.

Suit by Leon C. Holloman against Eliza W. Lindsey and others. From a decree for defendant, complainant appeals.

The facts are fully stated in the opinion of the court.

*E. L. Brown* and *J. B. Harris,* for appellant.

*King, Brower & Hurbut* and *Barnett & Perrin,* for appellee.

STEVENS, J., delivered the opinion of the court.

This is an attachment in chancery, instituted by appellant, as complainant in the court below, against appellees, nonresident owners of certain lands, situated in Yazoo county, known as the "Walker Plantation." Appellant sued for breach of contract to convey the land to him, and demanded decree for three thousand, five hundred and ninty-six dollars, the difference between the price he says he contracted to pay appellees and the price at which he had entered into a contract to resell to Messrs. Davis and Gunter. The attachment was duly issued and levied upon the lands in question, and thereafter appellees executed a bond agreeing to pay and satisfy any decree that the chancery court of Yazoo county or the supreme court might render against them, and the attachment was thereby discharged. The case was heard on bill, answer, and depositions, and a decree rendered by the chancellor, denying appellant any relief and dismissing the bill. The contract in question is between appellant and one H. W. Rodgers, residing in Chicago and alleged agent of appellees, and the contract is evidenced by letters and telegrams, there being no personal interview between the parties whatever.

It is the contention of appellant that he entered into a contract to purchase and stands in an attitude of purchaser, while appellees contend that appellant was their agent in effecting the sale of the plantation. The answer contends, not only that appellant was an agent, but that H. W. Rodgers had no authority in writing to bind appellees, owners of the land, who are scattered from Massachusetts to California. January 12, 1911, appellant wrote Mr. Rodgers at Chicago, stating that he understood Rodgers owned or had control of this property, and stating:

"If this land is for sale, I would be pleased to have your best price on the same with description of the place."

January 27th Rodgers replied, among other things:

"I am holding the land as per description and tracing of map herewith at $6 per acre."

March 15, 1911, appellant wrote another letter, commenting on the boll weevil and other adverse conditions, and saying:

"If you will let an option for ninety days, I will give you fifty dollars for same."

Mr. Rodgers, March 24th, took issue with Holloman on the boll weevil being so much a terror, boosted the value of the place, and wound up his letter by saying he would be glad to hear from appellant any "proposition you may have to offer." May 6th following appellant in another letter asked for an exclusive option, and for Mr. Rodgers to name the "very lowest price net to you," and "I believe I can soon find a buyer." In response, May 8th, Rodgers says:

"I am not prepared to give you an option on the land. . . . The price I named you is the very lowest I would accept, viz., six dollars per acre net to you. You would have to get your commission elsewhere," etc.

June 5th Mr. Holloman expressed regret that he could not obtain a full option, and stating he had given Messrs. Galloway & Co., Jackson, Miss., and a great many other parties, a description of the land, that Galloway & Co. had shown the land to Dr. Davis and Mr. F. E. Gunter, of Jackson, Miss., and asked Mr. Rodgers, if he should hear from the latter other than through appellant, to refer them back to appellant. Mr. Rodgers responded, June 8th, stating he would refer the parties named back to appellant. It appears that Mr. Holloman had asked Mr. Galloway to assist in showing and selling the lands in question and that when Messrs. Davis and Gunter looked over the place they expressed a willingness to buy at

twenty-one thousand and ninety-six dollars. After Mr. Holloman ascertained that Dr. Davis and Mr. Gunter would likely buy, he telegraphed, June 15th, Mr. Rodgers:

"Have cash offer for fifteen thousand dollars for Walker plantation. Will you accept? Answer."

To which Rodgers responded:

"Will not sell Walker plantation for fifteen thousand dollars."

June 16th, later, Mr. Holloman wired:

"Let me know the best cash you will do. Party leaves to-morrow. Act quick."

To which Rodgers responded:

"Twenty-one thousand dollars net, subject to confirmation by owners and agreement as to lease and title."

June 16th Holloman entered into a contract himself to sell and convey to Davis and Gunter at twenty-one thousand and ninety-six dollars, but proceeded in his attempt to hammer down the price, and several telegrams followed, making counter propositions one to the other, resulting in the telegram of the 18th by Rodgers to appellant, offering to accept seventeen thousand and five hundred dollars "net to me," and to this proposition Holloman wired acceptance.

Appellees thereafter ascertained through Dr. Davis that he was buying from Holloman at twenty-one thousand and ninety-six dollars, and on discovery of this fact Mr. Rodgers wired Holloman there were obstacles in the way of a trade, and asking Holloman to come to Chicago for a personal conference. On Holloman arriving in Chicago, Mr. Rodgers advised him that he did not know he was making such a profit out of the land, charged appellant with being agent, and not purchaser, and after further correspondence between Rodgers and the owners, the latter, through Rodgers, their agent, declined to convey the land to Holloman, but after the institution of this suit proceeded to close the deal with Messrs. Davis and Gunter. By correspondence beforehand, appellant had asked that the deed be made to him and sent to a bank

in Jackson, Miss., with sight draft upon him for the amount of the purchase price, and agreed to honor the draft when the title to the land had been approved by Messrs. Watkins & Watkins, attorneys. June 21st appellant wrote Rodgers, saying:

"Inclosed find deed drawn in favor of myself for what is known as the Walker plantation in Yazoo county, state of Mississippi. . . . Make draft on me for seventeen thousand and five hundred dollars, attach deed to draft, and forward papers to the Jackson Bank, . . . Upon the approval by Messrs. Watkins & Watkins of this deed and abstract, which I now am drawing, I will pay the the draft."

In a letter of June 23d Mr. Rodgers says:

"In sending deed to the Jackson Bank to close this deal, if that be the final agreement, we should, of course, be willing to have the papers submitted to Watkins & Watkins or other attorneys you may mention; but such examination, of course, would have to be at your personal expense."

In letter of June 27th Rodgers agreed "to divide the rental for 1911, . . . to pay one-half of general taxes for 1911 upon presentation of bill for same to me, and to pay on account of the bill for abstract work and attorney's fees not to exceed the sum of seventy-five dollars," and further stating:

"My lawyer further reports that he cannot grasp your point as to possible advantage a purchaser from you might obtain in case you divided the tract into several pieces."

June 28th appellant, by letter to Rodgers, among other things, says:

"Yours of the 27th relative to the sale of the Walker plantation to hand, and accepted as definite and final. . . . I inclose the deed herewith."

Many letters and telegrams between Mr. Rodgers and the owners of the land appear as exhibits to the depositions; and, without setting them out in detail, we think

the authority in writing of Mr. Rodgers to sell the lands is sufficiently shown.

It is contended by appellees that appellant is guilty of such fraud as places him in the attitude of coming into equity with unclean hands. The dealings between the parties hereto are all reflected by the correspondence, which we have carefully read and considered. The correspondence, in our judgment, does not constitute appellant an agent. H. W. Rodgers in his deposition admits:

It was not the amount of money he received or was to receive for the property that we object to, but the manner in which he obtained it or would have obtained it. . . . I did not think that seventeen thousand and five hundred dollars was all the property was selling for. I presumed he was getting his commissions.''

While the correspondence and dealings between the parties indicate that appellant was buying for purposes of resale, and that appellees well knew that appellant was attempting himself to buy the property and immediately resell it, this fact does not constitute appellant in any sense of the word an agent. The final contract and the very deed agreed upon constituted appellant a vendee, with all the obligations and rights of a purchaser. The rcord shows correspondence with reference to the title to a few acres of the land in question, and an agreement on the part of the appellant to accept a quit-claim deed to a portion of the land. The deed itself constitutes appellant a vendee, and a sight draft for the purchase price was to be drawn upon him. If this sale had been consummated, appellant could not have been heard to say that he was not the purchaser, and upon any breach of warranty of the title, or upon any controversy between the parties hereto growing out of the transaction in question, appellees could not have been heard to say they were not the vendors. If Holloman, therfore, was a purchaser and vendee, he could not be an agent, and as such agent charged with the duty of disclosing to appellees details of his proposed trade with Messrs. Davis and Gunter, or

the profit he was making. Mr. Rodgers, with whom all the correspondence was had, was himself an agent for the owners of the property, and at the very time he and appellant were negotiating their sale one with the other Mr. Rodgers was representing that the owners would not take less than $6 per acre, while as a matter of fact he had been authorized to sell at a price within his discretion between twelve thousand dollars and fifteen thousand dollars.

We are not called upon to pass judgment upon the propriety of any representation made, either by Mr. Rodgers or by Mr. Holloman, one to the other, or upon the trading ethics of either. It must be conceded that Rodgers was puffing his property, while appellant in various ways was pulling down the price. Appellant asked for an option for a limited time, and failed to get it. He asked for the exclusive right to handle the property, and failed to get any such contract. To all his propositions Mr. Rodgers responded that he had employed no one to handle the property, but would be glad to entertain any proposition appellant might see fit to make, the price always to be net to appellees. Properly construed, he was persistently and consistently saying to appellant:

"I have this property for sale, and want so much money for it. I do not care to give you or any one else an option or contract to handle it; but, if you have any propositions to purchase, I am ready to entertain them, and I stand ready to convey this property to you, or to any one you designate, at so much money net to the owners."

As a matter of fact, the real owners were getting more than they expected, appellant was making a good profit, and Messrs. Davis and Gunter were completely satisfied to pay the top price. Upon the undisputed testimony, the correspondence, and the actual dealings of the parties as reflected by the record, we think the decree of the court below should have been in favor of appellant, and the cause is therefore reversed, and decree here for appellant.

*Reversed.*